**Deborah A. LEWIS, Plaintiff,**

v.

**WASTE MANAGEMENT OF MISSISSIPPI, INC., Defendant.**

**CIV.A. No. 3:99CV535WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 30, 2001.

Justin Wade Sweat, Copeland, Cook, Taylor & Bush, Ridgeland, Sharon Denotra Henderson, Sharon D. Henderson, Attorney, David C. Dunbar, Dunbarmonroe, PLLC, Jackson, MS, for Deborah A. Lewis, plaintiffs.

Timothy M. Threadgill, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, William F. Kaspers, Joseph P. Shelton, Fisher & Phillips, LLP, Atlanta, GA, for Waste Management of Mississippi, Inc., defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court is defendant's motion for summary judgment, filed pursuant to Rules 56(b) and (c),[1] Federal Rules of Civil

---

1. Rule 56(b), Federal Rules of Civil Procedure, provides:

   **(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

   **(c) Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

Procedure. The defendant here is Waste Management of Mississippi, Inc. ("Waste Management"). Plaintiff here is Deborah A. Lewis, a former truck driver for defendant. On July 29, 1999, plaintiff filed this civil action against defendant, asserting causes of action under Title VII, as amended, Title 42 U.S.C. § 2000e–5,[2] *et seq.,* complaining of sexual harassment and constructive discharge. Aggrieved over the lawsuit, defendant has responded with the motion before the court, asking this court to dismiss plaintiff's case against defendant in its entirety. Relative to plaintiff's charge of sexual harassment in the workplace, defendant argues in its motion that it is sheltered from liability because once plaintiff complained of sexual harassment, defendant took prompt, decisive, appropriate and remedial action. Inasmuch as plaintiff has the obligation to prove to the contrary to win her lawsuit, defendant says it is now entitled to a grant of summary judgment because plaintiff, under the undisputed facts, simply cannot make out a prima facie dispute on this point.

Next, defendant attacks plaintiff's claim that she was constructively discharged. Supposedly having experienced three instances of sexual harassment, plaintiff quit her employment with defendant, after defendant refused to "guarantee" plaintiff that such incidents would never happen again. Defendant contends in its motion for summary judgment that these allegations are insufficient under the law to state a cognizable claim of constructive discharge.

Notwithstanding plaintiff's opposition to defendant's motion, this court is persuaded

to grant it. Having distilled the undisputed facts of this lawsuit, and having applied to those facts the teachings of *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), this court, convinced that plaintiff is unable to establish a prima facie case on either of her two claims, hereby dismisses this lawsuit with prejudice for the reasons which follow.

### *Findings of Fact*

The defendant, Waste Management of Mississippi, Inc., is engaged in the business of waste disposal and recycling, providing residential and commercial collection service for solid waste and recyclables. Plaintiff Deborah A. Lewis was hired by the defendant to work as a truck driver out of its Jackson, Mississippi, facility. Plaintiff worked continuously for the defendant from February, 1995, until September, 1997, when plaintiff voluntarily quit her employment with the defendant. Plaintiff reapplied and was rehired by the defendant, again as a truck driver, on September 7, 1998. Plaintiff voluntarily quit her second period of employment with the defendant on April 28, 1999.

When plaintiff first began working for the defendant, she was provided a document entitled "Company Rules and Regulations." These rules and regulations applied to plaintiff throughout her employment with the defendant. Company Rule and Regulation No. 8 made the following offense subject to disciplinary action up to and including immediate discharge:

that the moving party is entitled to a judgment as a matter of law.

**2.** Title 42 U.S.C. § 2000e, *et seq.,* provides in pertinent part that: "It shall be an unlawful employment practice for an employer(1) to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin; ...."

The use of threatening or abusive language or actions or any harassment, discourteous, indecent, or immoral conduct directed toward any employee. . . .

When plaintiff began her employment with the defendant, she also received a copy of a policy specifically aimed at preventing and correcting sexual harassment in the defendant's workplace. The defendant's "Policy Against Sexual Harassment" states that it is the policy of the defendant:

to maintain a work environment that permits every employee to be free from the sexual harassment of any co-worker, supervisor, or other person. It is unacceptable for any employee to engage in conduct that includes unwelcome sexual advances, requests for sexual favors, or similar implicit or explicit verbal or physical acts.

The defendant's Policy Against Sexual Harassment goes on to state that the defendant:

Disapproves of and will not tolerate any act of sexual harassment. Therefore, any employee engaging in such conduct will be subject to disciplinary action, including, if the circumstances warrant, termination of employment.

The defendant's Policy Against Sexual Harassment also prescribes the procedure that employees, including plaintiff, should follow to make a sexual harassment complaint:

[I]t should be submitted in writing, along with a description of the offensive conduct, to the manager responsible for the facility or department or, if appropriate to [Human Resources].

The manager of the defendant's Jackson, Mississippi, facility throughout both of plaintiff's periods of employment with the defendant was Craig Kirchhoff.

Shortly after plaintiff began working for the defendant the first time, that is, the time period from February, 1995, until September, 1997, she utilized the complaint procedure set forth in the defendant's Policy Against Sexual Harassment when she accused another truck driver of sexual harassment. Upon reporting the alleged offensive conduct, plaintiff followed the above-quoted procedure in the defendant's Policy Against Sexual Harassment and submitted her complaint of sexual harassment to the manager of the Jackson facility, Craig Kirchhoff. According to plaintiff, after she complained to Manager Kirchhoff, the harassment stopped and plaintiff never had any more problems of a similar sort from that employee. As a result of the successful resolution of her complaint to Manager Kirchhoff, plaintiff testified that throughout the remainder of her employment with the defendant (specifically, during the remainder of her first period of employment with the defendant, which ended in September of 1997, and throughout her second period of employment with the defendant, from September 7, 1998, until April 28, 1999), plaintiff knew that if she had a problem regarding sexual harassment or anything else, she could go to her manager, Craig Kirchhoff, and complain about it and the problem would be addressed.

Sometime during her second period of employment with the defendant, from September 7, 1998, until April 28, 1999, plaintiff and three of her male (non-supervisory) co-employees had an encounter with sexual overtones. The incident began in the drivers' break room and then moved into the men's locker room. Although plaintiff says she is unable to recall the specific date of this incident, plaintiff said that it occurred at least a month before she reported it to Craig Kirchhoff on March 2, 1999. Plaintiff never provided an explanation as to why, if plaintiff truly believed, at the time of the locker room

incident, that she had been sexually harassed, she had not reported the incident to Kirchhoff for more than a month. Because of plaintiff's delay in reporting the locker room incident to Kirchhoff, the defendant was unable to ever determine exactly when the incident involving plaintiff and several of her male co-workers in the men's locker room had occurred.

No one disputes, however, that as soon as plaintiff reported the locker room incident to her manager, Craig Kirchhoff, the incident was investigated by Kirchhoff with the assistance of Human Resources Manager Leslie Murrell. Kirchhoff and/or Murrell interviewed a dozen people, including plaintiff and all three of the male co-workers who were in the men's locker room with her. Murrell took written statements from nine of the persons interviewed. At the conclusion of the investigation, two of the three male co-workers received 30–day suspensions without pay and were required to take and successfully complete training regarding the defendant's Policy Against Sexual Harassment before they could resume working for the defendant. Similar training also was provided to the remainder of the defendant's Jackson facility workforce. The third male co-worker involved in the locker room incident was terminated.

During the defendant's investigation of plaintiff's March 2 report regarding the locker room incident, plaintiff also complained to Human Resources Manager Murrell about two other incidents of which plaintiff believed that she had been the victim of sexual harassment. The defendant fully investigated both incidents, taking written statements from the employees involved (including plaintiff's immediate supervisor, Willie Forbes), and followed its investigation with the appropriate remedial measures. In response to plaintiff's complaint to Murrell about the allegedly

sexually harassing behavior of an employee who worked for the temporary agency, Murrell provided the temporary agency with a copy of the defendant's Policy Against Sexual Harassment and informed the manager of the temporary agency that if the agency wanted to keep its contract with the defendant, all employees provided by the temporary agency to the defendant would have to strictly comply with the defendant's Policy Against Sexual Harassment.

Murrell informed plaintiff of the disciplinary actions that had been taken against the three male employees who had been involved in the locker room incident. Murrell also informed plaintiff of the actions that had been taken to ensure that all employees, including those provided by the temporary agency, had received training regarding the defendant's Policy Against Sexual Harassment and the importance of complying with that policy if they wanted to continue working for the defendant. Murrell also explained to plaintiff that if plaintiff wanted or needed any sort of psychological or psychiatric counseling, such counseling could and would be provided to plaintiff by the defendant free of charge through the defendant's Employee Assistance Program.

Notwithstanding all of the remedial measures that had been undertaken by the defendant in response to plaintiff's complaints, plaintiff decided voluntarily to quit her employment with the defendant, apparently because the defendant would not "guarantee" plaintiff that she would not be subjected to any further sexual harassment by any of her co-employees.

### Conclusions of Law

Plaintiff accuses defendant of maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended. She submits no

claim or evidence in this case of any *quid pro quo* harassment. Nor does she charge any claim or evidence in this case of a tangible employment action taken by the defendant against plaintiff. Nor does she claim that any sexual harassment was committed by any of the plaintiff's managers or supervisors during plaintiff's second period of employment with the defendant (including the 180–day period preceding the filing of plaintiff's charge with the Equal Employment Opportunity Commission ("EEOC")).[3] Thus, there is no issue before the court of the defendant's vicarious liability for the unlawful acts of its managers and supervisors.

### The Summary Judgment Standard

While the defendant, as the party moving for summary judgment on all claims, bears the initial burden of demonstrating to this court that there are no genuine issues of material fact or law which would preclude the entry of summary judgment, once the defendant meets its initial burden, summary judgment should be granted unless the plaintiff comes forward and presents relevant, admissible evidence which establishes that a genuine issue of material fact or law does exist. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As the Fifth Circuit noted in *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir.1991), "only evidence—not argument, not facts in the complaint—will satisfy" the plaintiff's burden.

### Sexual Harassment

In order to establish a prima facie claim of sexual harassment by her co-workers, plaintiff must show that: (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (2) the harassment was based upon sex; (4) the harassment was so severe and pervasive as to affect a term, condition or privilege of employment; and (5) defendant knew or should have known of the harassment and failed to take prompt remedial action. *See Nash v. Electrospace System, Inc.*, 9 F.3d 401, 403 (5th Cir.1993); *Jones v. Flagship International*, 793 F.2d 714, 719–20 (5th Cir.1986).

### Prompt Remedial Action

■ The defendant herein bases its motion for summary judgment on plaintiff's inability to prove the fifth element of her hostile environment sexual harassment claim. This court is persuaded by defendant's argument.

Plaintiff submitted with her response to the defendant's motion for summary judgment an affidavit from a former supervisor, Edna James. James' employment with the defendant terminated on July 31, 1998, several weeks before plaintiff began her second period of employment with the defendant on September 7, 1998. While the James' affidavit seeks to show sexual harassment occurring in the workplace and ignored by the managers, none of the reported instances occurred anytime during plaintiff's second period of employment with the defendant. Further, nothing in the James' affidavit undermines the company's swift reaction to plaintiff's report of the locker room incident.

The court finds that plaintiff failed to report the allegedly inappropriate locker room conduct for at least a month, that she knew the procedure for reporting it, that the procedure had worked in the past, and

---

**3.** Pursuant to Title 42 U.S.C. § 2000e–5(e), a plaintiff must file a complaint with the EEOC within 180 days after the alleged discriminatory act has occurred. Timely filing of charge with EEOC is a prerequisite to maintenance of a Title VII suit. *Delaware State College v. Ricks*, 449 U.S. 250, 256 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980).

that the person to whom plaintiff was supposed to make such a report was open to complaints of this sort. Plaintiff herself testified that Manager Kirchhoff was fair.

This court further finds that the defendant's prompt and appropriate response and remedial actions upon learning of plaintiff's complaints were entirely reasonable and, thus, insulate the defendant from liability, as a matter of law, for the allegedly hostile working environment. As the Fifth Circuit held in *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 402 (5th Cir. 1993), "when a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." The court finds the following words of the Fifth Circuit in *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795–96 (5th Cir.1994), also appropriately descriptive of the remedial efforts of the defendant in the case at bar:

> [The defendant] did what a company ought to do when faced with allegations that an employee has been subjected to sexual harassment .... It took the allegations seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of such investigations. Holding a company ... liable after it has taken such action would produce truly perverse incentives benefitting no one, least of all actual or potential victims of sexual harassment.

The Fifth Circuit's observations in *Carmon v. Lubrizol Corp., supra,* apply to the facts of this case *sub judice.* The plaintiff complained. Her complaints were heeded and promptly investigated. The defendant disciplined the guilty employees and publicly proclaimed its disdain for the offensive conduct, while offering to plaintiff whatever counseling she might need.

Surely, the defendant's appropriate, immediate reaction qualifies as a "prompt remedial response."

In her response, plaintiff does not in any way dispute the evidence submitted by the defendant which purports to show that the defendant took prompt and appropriate remedial action when it received plaintiff's complaint of inappropriate conduct. Nor does plaintiff dispute the defendant's conclusion, from such evidence, that its response to plaintiff's complaint was, as a matter of law, prompt, appropriate, and effective. To the contrary, plaintiff concedes that the defendant "put water on the fire" as soon as plaintiff brought her "smoke" to the attention of the defendant's management.

Plaintiff nevertheless contends that the defendant's prompt and appropriate response to her complaint should not relieve the defendant from potential liability in this case because: (1) plaintiff claims that she was discouraged from complaining earlier, and the defendant should be liable for such discouragement; and (2) plaintiff also claims that the defendant had constructive notice of the inappropriate conduct of which plaintiff eventually complained and for which plaintiff is seeking redress in this action.

Plaintiff has failed to cite or present admissible evidence of knowledge by the defendant of actionable harassment against the plaintiff which would support either of her contentions. In fact, plaintiff's own prior sworn deposition testimony in this case directly rebuts her first contention.

In her October 11, 1999, deposition, plaintiff answered as follows:

> Q: You knew that if you thought you were being harassed that you could complain to Craig Kirchhoff about it. Correct?
>
> A: Yes.

Q: Craig Kirchhoff always treated you fair[ly], didn't he?

A: Yes. (5/15 Exh. A. at 102:18–21)

. . .

Q: Your understanding of Waste Management's policy against harassment was if you had a problem you could go to Craig [Kirchhoff] and complain?

A: If I had any kind of problem, I could go to Craig and talk about it.

Q: And that was your understanding the second time that you worked for Waste as well. If you had a problem, you could go to Craig and complain about it. Correct?

A: True . . .

Q: You knew who to report to. You knew you could go and report it [the locker room incident] to Craig. Correct?

A: Yes. (5/15 Exh. A at 105:10—106:2).

Next, in support of her charge that defendant should have known about the alleged harassment of plaintiff before she reported it on March 2, 1999, plaintiff submits and relies upon an affidavit from a former employee and supervisor of the defendant, Edna James, as well as selected excerpts from a deposition taken in this case of a current employee, David Spiffic. As explained below, neither the affidavit testimony of James nor the cited deposition testimony of Spiffic contains the kind of specific, material evidence required in order for plaintiff to avoid summary judgment on her sexual harassment/hostile environment claim.

Edna James' employment with the defendant terminated on July 31, 1998—five and a half weeks before plaintiff was rehired on September 7, 1998. In other words, James was not employed during plaintiff's second period of employment with the defendant (from September 7, 1998, to April 28, 1999). The subject of

James' affidavit, thus, necessarily covers a period of time which not only predates plaintiff's second period of employment with the defendant, but also precedes the 180–day actionable harassment period prescribed by Section 706(f) of Title VII.[4]

Plaintiff also cites selected excerpts from the deposition testimony of David Spiffic, a non-supervisory current employee, in which Spiffic stated that drivers in the breakroom sometimes participated in joking, and that such joking was sometimes of a sexual nature. From the excerpts cited by plaintiff, however, it is unclear whether any supervisors were present when such joking occurred. Moreover, even if a supervisor had been present and overheard such joking, there is no evidence that he/she or they did not react promptly and appropriately to it. On the other hand, Spiffic testified that the Company had warned Spiffic and everyone else that such joking is inappropriate. Spiffic also testified that the Company had held meetings to reiterate its no sexual harassment policy. Spiffic's cited testimony does not support a reasonable inference that the defendant had constructive notice of an allegedly hostile work environment, yet had failed to take prompt and appropriate remedial action. Plaintiff, thus, has failed to raise any genuine issue of material fact for which a trial would be required, and plaintiff's hostile work environment claim, therefore, is dismissed as a matter of law.

### *Constructive Discharge*

█ The court also finds and concludes that plaintiff has failed to state an actionable claim for constructive discharge. In this Circuit, a constructive discharge exists only when the employer "deliberately" makes an employee's working conditions so intolerable that the employee is forced to resign. *See Dornhecker v. Mali-*

---

**4.** See footnote 3.

*bu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir.1987). The standard is a reasonable person standard—that is, whether a reasonable person would have felt compelled to resign under the circumstances. *See Barrow v. New Orleans, S.S.*, 10 F.3d 292, 297 n. 19 (5th Cir.1994). This court finds and concludes that because the defendant responded with prompt and appropriate remedial actions in response to plaintiff's complaints, plaintiff has failed to state an actionable claim for constructive discharge. Moreover, to the extent that plaintiff apparently based her decision to quit upon the requirement that the defendant "guarantee" that she would not be subjected to any further co-worker harassment, such a condition is unreasonable as a matter of law because it is more than the law requires of the defendant or any other employer.

For all of the foregoing reasons, the court grants summary judgment to the defendant and against plaintiff on all three of the counts in plaintiff's complaint. The court shall enter a separate judgment in accordance with the local rules.