In re Kenneth A. FARRISH.

Kenneth A. Farrish, Plaintiff,

v.

U.S. Dept. of Education, Defendant.

Bankruptcy No. 00–04027JEE.
Adversary No. 00–00189JEE.

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

Dec. 27, 2001.

has voluntarily returned the entire fee to the Debtors.

Hon. Clayton Lockhart, Jackson, MS, for debtor.

Hon. Pshon Barrett, Jackson, MS, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

EDWARD ELLINGTON, Chief Judge.

This matter came on for trial on the *Complaint to Determine Dischargeability of Debt* filed by the Debtor and the *Answer* thereto filed by the U.S. Department of Education (DOE). The Court having considered the trial testimony and exhibits, along with the post-trial brief filed by the DOE, concludes for the reasons that follow that the relief sought in the Debtor's *Complaint* is not well taken and should be denied.

### FINDINGS OF FACT

The Debtor in this case is a 41 year old, single male, who has no dependents. He obtained his undergraduate degree in biology from Jackson State University in 1982 and his doctorate degree from the Ohio College of Podiatric Medicine in 1988. To finance his education, the Debtor incurred numerous student loans.[1] After obtaining his doctorate degree in podiatry, the Debtor was employed by the Foot Pain Clinic in Hazelcrest, Illinois, from July 1988 through June 1997. During that time, he made sporadic payments on his student loans, but on August 10, 1996, he consolidated his various student loans into one loan in the amount of $146,997.49.

The Debtor subsequently moved to Mississippi. For a portion of 1998, he was employed full-time and earned an adjusted gross income of $60,540.00 during that year. However, the company for which the Debtor was working filed bankruptcy, and he was thereafter unable to obtain steady employment. In 1999, the Debtor reported an adjusted gross income of $16,022.00. In 2000, he reported earning only $1,859.00.

During the three years following his first loan consolidation, the Debtor made twenty loan payments totaling $5,370.39. He also received two forbearances and one deferment. In June 1999, following the loss of his full-time employment, the Debtor signed a promissory note for a second consolidation loan in the amount of $185,418.60. He made fifteen payments totaling $1,839.00 on the second consolidation loan. He also received another forbearance.[2]

Since his second loan consolidation, the Debtor has been self-employed at various

---

1. The Debtor borrowed the following:

 Perkins loans in the amounts of $2,522.40 and $3,438.18;
 HPSL loan in the amount of $249.72;
 HEAL loan in the amount of $99,209.25;
 GSL loans in the amounts of $32,128.69 and $2,944.72.

2. The second loan consolidation payments were calculated under the Income Contingent Repayment Plan, which based payment

clinics on a part-time or as-needed basis. In 2000, he testified that he applied at two additional clinics in pursuit of employment in the field of podiatry, but he has not pursued any employment outside his specialized field. He currently lives with his parents on a rent-free basis, and his parents pay for his living expenses and supplement other essential costs such as his professional certification fees.

On August 25, 2000, the Debtor filed his petition under Chapter 7 of the Bankruptcy Code.[3] In his bankruptcy schedules, the Debtor listed his consolidated student loan with the DOE in the total amount of $193,565.74. His remaining debt was approximately $10,000 of unsecured debt. He received a *Discharge of Debts* on January 10, 2001.

The Debtor filed this adversary proceeding to have the dischargeability of his student loan debt determined under 11 U.S.C. § 523(a)(8), contending that repayment will cause him undue hardship. The DOE maintains that the Debtor does not meet the requirements for an undue hardship discharge.[4]

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction over the parties to and the subject matter of this pro-

ceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

### II.

Section 523(a)(8) provides that a discharge under §§ 727, 1141, 1228(a)(b) or 1328(b) of the Code does not discharge a debtor from any debt:

> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). Thus, the court may discharge an otherwise nondischargeable student loan if excepting the debt from discharge will impose an undue hardship on the debtor or the debtor's dependents. Vol. 4, *Collier on Bankruptcy*, ¶ 523.14[2], p. 523–97 (Matthew Bender, 15th Ed. Revised 2001). "Undue hardship" is not defined in the Bankruptcy

---

amounts on the Debtor's adjusted gross income.

3. Hereinafter, all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.

4. The Court recognizes that a large percentage of the Debtor's student loan consolidation amount consists of a loan he obtained under the Health Education Assistance Loan Act (HEAL). The dischargeability of HEAL loans under all chapters of the Bankruptcy Code is controlled by 42 U.S.C. § 292f(g), rather than § 523(a)(8), and are subject to an "unconscio-

nability" standard, which is significantly more stringent than the "undue hardship" standard of § 523(a)(8). *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir. 1996). However, in evaluating whether a debtor can establish that payment of the debt would be unconscionable, a court should consider the same factors used in determining whether a debt is dischargeable under the undue hardship standard. *Id.* at 1149–50. Given the Court's conclusion that the Debtor in this case has failed to meet the undue hardship standard, he has certainly failed to meet the unconscionability standard as required for the discharge of his HEAL loan.

Code. Rather, "[t]his exemption from the exception to discharge requires the bankruptcy judge to exercise discretion in determining whether payment of the debt will cause undue hardship on the debtor and his dependents, thus defeating the 'fresh start' concept of the bankruptcy laws." *Id.* There may well be circumstances that justify failure to repay a student loan, such as illness or incapacity, however, and when a court finds that such circumstances exist, it may order the debt discharged. *Id.* A debtor seeking to discharge student loan debt bears the burden of proving, by a preponderance of the evidence, that the elements of undue hardship are met. *In re Brown,* 247 B.R. 228, 233 (Bankr.N.D.Ohio 2000).

■ The most widely used test for evaluating the dischargeability of a student loan under § 523(a)(8)(B) is the three-prong test articulated by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2nd Cir.1987). Under the *Brunner* test, a debtor is required to show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and

(3) that the debtor has made good faith efforts to repay the loan.

*Id.* at 396. Although the Fifth Circuit has not formally adopted the *Brunner* test, it has been adopted by the Third, Sixth, Seventh, and Ninth Circuits.[5] Moreover, this Court has routinely utilized the *Brunner* analysis in prior opinions and will, consequently, determine the dischargeability of the Debtor's student loan in accordance with the *Brunner* test.

■■ "The first prong of *Brunner* requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993). "[O]nly if the debtor meets this test should a court examine the other two *Brunner* requirements." *Id.*

■ The Debtor must, at the very least, demonstrate that he is unable to earn sufficient income to maintain himself and to repay the educational debt. *Stebbins–Hopf v. Texas Guaranteed Student Loan Corp. (In re Stebbins–Hopf),* 176 B.R. 784, 786 (Bankr.W.D.Tex.1994). Implicit in the determination of whether the debtor has the ability to maintain a minimal standard of living if required to pay back the loan is a showing that the debtor is both minimizing expenses and maximizing income. *In re Poche,* 1995 WL 688782, *3 (E.D.La.1995); *see also Healey v. Massachusetts Higher Educ. (In re Healey),* 161 B.R. 389, 394 (E.D.Mich.1993) (stating that debtor must demonstrate he is actively minimizing current household living expenses and maximizing personal and professional resources).

---

**5.** *See In re Pena,* 155 F.3d 1108 (9th Cir. 1998); *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298 (3d Cir.1995); *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356 (6th Cir.1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *In re*

*Roberson,* 999 F.2d 1132 (7th Cir.1993). The Eighth Circuit, while purporting to apply its own independent "totality of the circumstances" test, requires an examination of the same factors articulated by *Brunner. See Andrews v. South Dakota Student Loan Assistance Corp.,* 661 F.2d 702 (8th Cir.1981).

As noted, the Debtor is 41 years old, single, and has no dependents. He is in apparent good health, and presented no evidence of any health problems which would prevent him from obtaining work. At the time of filing, he listed net income of $867.00 per month, although at trial he testified that he has guaranteed income of only $300.00 per month and earns additional income of approximately $200.00 per month from other clinics. In his schedules, he listed expenses of $824.00 for his food, telephone bill, car note, transportation costs, and his health and auto insurance. At trial, he testified that he lives at home with his parents, who provide such necessities for him and who further supplement his income as needed. Thus, the Debtor has surely minimized his living expenses by having his parents, in essence, support him.

However, the Court concludes that the Debtor has not maximized his income. To satisfy this condition, the Debtor must demonstrate that he is "making a strenuous effort to maximize h[is] personal income within the practical limitations of h[is] vocational profile." *In re Healey*, 161 B.R. at 394. Despite receiving only $300.00 per month of guaranteed income, the Debtor testified that within the past year he has applied to only two other clinics in his speciality area. Yet, "[a] resolute determination to work in one's field of dreams, no matter how little it pays, cannot be the fundamental standard from which 'undue hardship' is measured." *In re Healey*, 161 B.R. at 395.

As further proof that he has not attempted to maximize his income, the Debtor has not attempted to relocate even though other locations offer a more opportune environment in which to practice podiatry (as evidenced by his continuous employment in Illinois from 1988 through 1997), and he did not present any argument or evidence as to why he chooses to remain in an area of limited opportunity in his chosen field of work. *See New Jersey Higher Educ. Assistance Auth. v. Zierden–Landmesser (In re Zierden–Landmesser)*, 249 B.R. 65 (M.D.Pa.2000) (where court held no undue hardship would result from requiring debtor, 38 year old podiatrist in good health and not suffering from any occupational health problems, to repay student loans, even though, due to lack of demand for podiatrist in tiny town where debtor resided and practiced, debtor could not currently make loan payments while maintaining minimum standard of living, given evidence that debtor could relocate to another area where there might be greater demand for services); *see also Muto v. Sallie Mae (In re Muto)*, 216 B.R. 325, 330 (Bankr.N.D.N.Y.1996) (finding bankruptcy court would commit reversible error if it were to conclude that Chapter 7 debtor's efforts maximized either his personal or professional resources, for purposes of first prong of *Brunner* test, where debtor, who held MBA degree in finance as well as brokerage license, worked as microfilm clerk and was reluctant to seek more lucrative position outside immediate geographic area). Consequently, the Debtor has failed to persuade the Court that he cannot earn sufficient income to maintain a minimal standard of living for himself and to repay his student loan.

As the Debtor has failed to carry his burden with respect to the first prong of the *Brunner* test, it is unnecessary for the Court to address the remaining elements. However, the Court notes that it nevertheless would have determined that the Debtor failed to meet the second and third prongs of the *Brunner* test. Regarding the second prong, the Debtor failed to demonstrate that his financial condition is likely to exist for a significant portion of the repayment period. An unemployed or underemployed debtor must

show that he searched for better-paying jobs outside the field for which he was trained. *See Grigas v. Sallie Mae Serv. Corp. (In re Grigas)*, 252 B.R. 866, 875 (Bankr.D.N.H.2000) (debtor failed to meet second prong of *Brunner* test where she confined job search to chosen field which offered little in way of opportunity or compensation and thus voluntarily underemployed self); *see also Berry v. Educ. Credit Mgmt. Corp. (In re Berry)*, 266 B.R. 359 (Bankr.N.D.Ohio 2000) (debtor failed to meet second prong of *Brunner* test where debtor could find higher paying work outside of chosen field). The Debtor testified at trial that in the past he has worked as a driver for Federal Express. However, when asked whether he had considered working for Federal Express again, he responded that he had not. Furthermore, when asked whether he had looked for other jobs outside the field of podiatry, the Debtor responded, "Not right now, no." (Trial Transcript at pg. 23). Thus, the Court would conclude that the Debtor failed to demonstrate that he is unable to locate work outside of his chosen profession, and that he has instead voluntarily underemployed himself.

In consideration of the third prong of the *Brunner* test, the Debtor also failed to persuade the Court that he made a good faith effort to repay his loans. "The good faith inquiry is guided by the understanding that 'undue hardship' encompasses a notion that the debtor's bad financial condition and default should not have been caused by the debtor's own willfulness or negligence, but rather by factors beyond the debtor's control." *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3d Cir.1995). As stated previously, at trial the Debtor's testimony established that rather than circumstances being beyond his control, his situation is in large part directly due to his voluntarily choice not to actively pursue better paying employment. Moreover, the Debtor's scheduled debt consisted of approximately $10,000 of unsecured credit card debt and $193,565.74 of educational loan debt. Where a debtor's financial filings indicate that all or most of his scheduled debt consists of student loans, a suggestion of lack of good faith is raised in that the debtor's dominant motive in seeking relief is to evade student loan obligations. *See Harris v. Pennsylvania Higher Educ. Assistance Agency (In re Harris)*, 103 B.R. 79, 82 (Bankr.W.D.N.Y.1989). Accordingly, the Court would find that the Debtor failed to carry his burden with respect to the good faith prong of the *Brunner* test.

### CONCLUSION

Based on the foregoing, the Court finds that the relief requested in the *Complaint to Determine Dischargeability of Debt* is not well taken and should be denied.

A separate final judgment consistent with this opinion will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.