In re Darius L. WYNN

Darius L. Wynn

v.

Educational Credit Management Corporation.

Bankruptcy No. 0101075EE.
Adversary No. 060174.

United States Bankruptcy Court,
S.D. Mississippi.

Sept. 28, 2007.

Angela T. Carpenter, Vicksburg, MS, for Debtor.

William McCollum Halcomb, Birmingham, AL, Robert L. McArty, Ridgeland, MS, for Educational Credit Management Corp.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE MOTION FOR SUMMARY JUDGMENT

EDWARD ELLINGTON, Bankruptcy Judge.

This matter came before the Court on the *Motion for Summary Judgment* filed by Educational Credit Management Corporation (ECMC) and the *Plaintiff's Response to ECMC's Motion for Summary Judgment and Brief in Support of ECMC's Motion for Summary Judgment* filed by the Debtor, Darius L. Wynn. After considering ECMC's motion and attached affidavit, the Debtor's response and both parties' briefs, the Court finds for the fol-

lowing reasons that the motion is well taken and should be granted.

## FINDINGS OF FACT

In 1992 and 1995, the Debtor obtained student loans in order to fund his college education. On or about December 8, 1995, the Debtor executed an *Application/Promissory Note* (Note) for a consolidation loan of his two student loans in the amount of $35,551.66. The lender was Sallie Mae, and the guarantor was United Student Aid Funds, Inc. (USAF).

The Debtor made one payment in the amount of $138.84 on or about March 24, 1997. Between the period of July 23, 1996, and August 2, 2002, the Debtor obtained eleven forebearances and three deferments of his loan payments.[1] Following each forebearance and deferment, the interest was capitalized.

During this time period of forebearances and deferments, the Debtor filed a *pro se* petition for relief under Chapter 7 of the United States Bankruptcy Code on February 27, 2001. The Debtor listed Sallie Mae on *Schedule E–Creditors Holding Unsecured Priority Claims* in the amount of $55,000. The Debtor received his *Discharge of Debts* on June 29, 2001, and his case was closed on July 3, 2001.

Upon the conclusion of the last deferment in February of 2003, the Debtor failed to make any payments to Sallie Mae, and the Note went into default. Sallie Mae then made a claim upon USAF based upon USAF's guarantees. On or about April 30, 2004, USAF paid the default claim to Sallie Mae. At the time of the Debtor's default, the default interest was capitalized, and the Debtor owed a principal balance of $69,561.27.

USAF entered into a rehabilitation agreement with the Debtor in June of 2004. Pursuant to the agreement, the Debtor made payments of $250 each for twelve consecutive months, for a total of $3,000. Upon the completion of these twelve payments, the Debtor's loan was rehabilitated and was no longer considered to be in default. USAF then returned the Note to Sallie Mae.

Beginning in June 2005, the Debtor obtained three consecutive forbearance periods from Sallie Mae. During the last forbearance period, which ended in September of 2006, the Debtor filed a motion to reopen his bankruptcy case, and on June 2, 2006, the Debtor's bankruptcy case was reopened. On October 16, 2006, the Debtor commenced the above styled adversary proceeding[2] with the filing of his *Motion to Discharge Student Loans* (Motion). In his Motion, the Debtor states that he has three dependents; that his share of the household expenses exceeds his monthly income; and, that he has additional medical expenses as a result of his wife's breast cancer. Therefore, the Debtor asks that the Court discharge his student loan to Sallie Mae as it would be a financial hardship for him to have to repay the student loan.

On November 22, 2006, ECMC[3] filed its *Answer of ECMC.* In its answer, ECMC

---

1. The last deferment was granted on August 2, 2002, and ended on February 23, 2003.

2. While the Debtor had filed his original petition *pro se,* Ms. Angela T. Carpenter is representing the Debtor in this adversary proceeding.

3. When the Debtor filed the above styled adversary proceeding, Sallie Mae filed a claim with USAF pursuant to the loan guarantees. By agreement, USAF assigns to ECMC its loans that are subject to an adversary proceeding. Therefore, on or about January 5, 2007, USAF assigned all right, title and interest in the Note to ECMC. On January 18,

denies that the Debtor should be granted a hardship discharge of his student loan.

ECMC filed its *Motion for Summary Judgment* and *Brief in Support of ECMC's Motion for Summary Judgment* on April 20, 2007. On June 5, 2007, the Debtor filed his *Plaintiff's Response to ECMC's Motion for Summary Judgment and Brief in Support of ECMC's Motion for Summary Judgment* (Response and Brief).

The Debtor is approximately 38 years old and is currently employed with the United States Corps of Engineers where his gross monthly income is $5,128. In his *Plaintiff's Response to ECMC's Second Discovery Requests,* the Debtor states that his net monthly income is $2,800. The Debtor's gross annual income for 2006 was $64,000, with a net income of $42,000. The Debtor states that his income for 2006 was not typical but resulted from overtime he earned as a result of Hurricane Katrina relief work.

The Debtor is married and has three children, two children from prior relationships and one child with his current wife. The Debtor's wife, Bridgett Wynn, works for Diamond Jim's Casino.[4] Mrs. Wynn's gross monthly income is $5,500, with a net monthly income of $3,200. Mrs. Wynn's gross annual income for 2006 was $68,000, with a net income of $48,000. Therefore, the total household income for 2006 was $132,000 gross and $90,000 net.

The Debtor and Mrs. Wynn have monthly household expenses of $3,306.00. These expenses are broken down as follows:

| | |
|---|---|
| Mortgage | $ 750 |
| Electricity/heat | $ 283.33 |
| Water | $ 50 |
| Telephone | $ 60 |
| Cars | $ 443 (Debtor's only) |
| Groceries | $ 400 |
| Meals outside | $ 200 |
| Recreation | $ 50 |
| Medicine | $ 0 |
| Clothing | $ 166.66 |
| Child care | $ 156 |
| Installment payments | $ 342 |
| Medical insurance | $ 264 |
| Homeowners insurance | $ 110 |
| Life insurance | $ 32 |
| | |
| Total | $3,306.99 |

In addition, the Debtor pays a total of $540 in child support per month for two of his children. Therefore, the household's total monthly expenses are $3,846.99.

Attached to ECMC's motion for summary judgment is the affidavit of Lisa A. Thigpen, Bankruptcy Litigation Specialist for ECMC. Ms. Thigpen states that as of April 15, 2007, the Debtor owes ECMC $103,252.08, plus interest accruing at a fixed rate of 9% per annum. Further, Ms. Thigpen states that under the various repayment plans that would be available to the Debtor, the Debtor's payments on his student loans could range from a low of $709.86 to a high of $1,913.83. (See paragraph 26 of the *Affidavit of Lisa A. Thigpen* and *Exhibit H* to the affidavit.)

In his *Plaintiff's Response to ECMC's First Set of Interrogatories,* the Debtor states that he and his dependents are in good health. However, in other pleadings before the Court, the Debtor states that his wife has been undergoing treatment for breast cancer. He further states that "the high costs of her medical treatment has put an additional strain on the couple's finances due to out-of-pocket expenses that average about $500 per month, of which

2007, the Court entered an order on the *Motion to Add ECMC as a Defendant* in which ECMC was made the sole defendant in the adversary.

4. The Debtor argues that the Court should only consider the Debtor's income and expenses. However, since that is a legal issue to be decided by the Court, the Court will list the household income and the household expenses.

[he] must assist in the payments." *Plaintiff's Response to ECMC's Motion for Summary Judgment and Brief in Support of ECMC's Motion for Summary Judgment,* p. 2, June 5, 2007. Therefore, the Debtor asserts material facts are in dispute and that ECMC's motion for summary judgment should not be granted.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

Rule 56 of the Federal Rules of Civil Procedure[5] provides that in order to grant a motion for summary judgment, the court must find that "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addition, when considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact. *Thatcher v. Brennan,* 657 F.Supp. 6, 7 (S.D.Miss.1986), *aff'd,* 816 F.2d 675 (5th Cir.1987)(citing *Walker v. U–Haul Co. of Miss.,* 734 F.2d 1068, 1070–71 (5th Cir.1984)); *See also, Matsushita Elec. Indus. Co., Ltd. v. Ze-*

*nith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538, 553 (1986).

Rule 56 further provides,

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Bankr.P. 7056(e).

Thus, the moving party bears the initial responsibility of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party has made its required showing, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file designate specific facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. To defeat a properly supported motion for summary judgment, the nonmovant must adduce affirmative evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). "This requires that a (party) 'make a showing sufficient to establish the existence of an[y] element essential to that party's case, and on which that party will bear the burden of proof at

---

**5.** Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

trial.'" *Fields v. Hallsville Independent School Dist.,* 906 F.2d 1017, 1019 (5th Cir.1990)(quoting *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548) "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.... The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)." *Bradley v. Frito–Lay,* 2006 WL 2805317, at *3 (S.D.Miss. Sept.25, 2006). The evidence introduced by the nonmoving party in response to a motion for summary judgment must have significant probative value. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. "As the Fifth Circuit noted in *Solo Serve Corp. v. Westowne Assoc.,* 929 F.2d 160, 164 (5th Cir.1991), 'only evidence-not argument, not facts in the complaint-will satisfy' the [debtor's] burden." *Lewis v. Waste Management of Miss., Inc.,* 148 F.Supp.2d 726, 731 (S.D.Miss. 2001).

### III.

While the Debtor does not cite any specific code section in his motion seeking to have his student loan discharged, the Court finds that 11 U.S.C. § 523(a)(8)[6] is the pertinent code section. Section 523(a)(8) provides:

§ 523. Exceptions to discharge

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt-

. . . . .

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the

debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).

The Debtor does not dispute that he is indebted to ECMC for an educational loan made, insured or guaranteed by a governmental unit. Therefore, the only issue before the Court is whether the repayment of the student loan will impose an undue hardship on the Debtor and his dependents.

In *Tennessee Student Asst. Corp. v. Hood,* 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), the United States Supreme Court found that § 523(a)(8) is "self-executing" and that "(u)nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Asst. Corp.,* 541 U.S. at 450, 124 S.Ct. 1905. Therefore, in order for the Debtor to have his otherwise nondischargeable student loan declared dischargeable, the Debtor must prove that excepting the debt from discharge will impose an undue hardship on the Debtor and on his dependents.

---

**6.** Hereinafter all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

■ "Undue hardship" is not defined in the Bankruptcy Code. "However, the statute requires a showing of 'undue' hardship; mere 'garden-variety' hardship is insufficient justification for a discharge of student loan debt." *Salyer v. Sallie Mae Servicing Corp. (In re Salyer)*, 348 B.R. 66, 69 (Bankr.M.D.La.2006)(footnotes omitted).

■ In order to evaluate the undue hardship determination of § 523(a)(8), the Court of Appeals for the Fifth Circuit in *In re Gerhardt*[7] adopted the so called *Brunner* test, which was crafted by the Court of Appeals for the Second Circuit in *In re Brunner*.[8] In order to obtain a hardship discharge of a student loan under the *Brunner* three-prong test, a debtor must show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and

(3) that the debtor has made good faith efforts to repay the loan.

*In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003), *citing, Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). *See also, Farrish v. U.S. Dept of Education (In re Farrish)*, 272 B.R. 456, 461 (Bankr.S.D.Miss.2001).

■ While the Court agrees that "(t)he debtor bears the burden of proving all three elements by a preponderance of the evidence [, and] (i)f the debtor fails to prove even one of these, the inquiry ends and the student loan cannot be discharged(,)"[9] the matter before the Court involves a motion for summary judgment, and as stated previously, the moving party carries the initial burden of proof. Therefore, ECMC " 'must prove that there is an absence of evidence to support the (debtor's) claim of undue hardship or, *alternatively*, the creditor must present affirmative evidence demonstrating that the debtor will be unable to prove an undue hardship claim at trial.' *White v. United States Department of Education (In re White)*, 243 B.R. 498, 506 (Bankr. N.D.Ala.1999)." *Tollison v. Suntech, Inc. (In re Tollison)*, 305 B.R. 656, 659–60 (Bankr.N.D.Miss.2004).

## IV.

### A.

■ The first prong of the *Brunner* test requires that the Debtor must show that he is unable to maintain a minimal standard of living for himself and his dependents if he is required to repay the student loan. In determining whether the Debtor can maintain a minimal standard of living, the Debtor asserts that the Court may only consider his income and not his wife's income. The Court disagrees. To determine whether the Debtor can maintain a minimal standard of living for *himself and his dependents*, the Court finds that it must consider the Debtor's actual circumstances and not hypothetical circumstances. Therefore, the Court must examine "the earnings of both the debtor and his or her spouse for the purpose of evalu-

---

**7.** *U.S. Dept. of Education v. Gerhardt, (In re Gerhardt)*, 348 F.3d 89 (5th Cir.2003).

**8.** *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987).

**9.** *In re Salyer*, 348 B.R. at 70 (footnotes omitted).

ating the quality of the debtor's lifestyle." *In re White*, 243 B.R. at 509(footnote omitted). "(W)ell established case law makes it clear that total household income, including that of a non-debtor spouse, . . ., must be considered in conducting this minimal standard of living analysis, as well as its relevance in generally determining undue hardship under the Bankruptcy Code." *Davis v. Educational Credit Management Corp. (In re Davis )*, 373 B.R. 241, 2007 WL 2088942, *5 (W.D.N.Y. July 19, 2007). *See also, United Student Aid Funds, Inc. v. Pena (In re Pena )*, 155 F.3d 1108, 1112–12 (9th Cir.1998); *Rice v. United States (In re Rice )*, 78 F.3d 1144, 1150 (6th Cir. 1996); *Russ v. Texas Guaranteed Student Loan Corp. (In re Russ )*, 365 B.R. 640 (Bankr.N.D.Tex.2007); *In re Nahat*, 278 B.R. 108, 112, n. 3 (Bankr.N.D. Tex 2002).[10]

Furthermore, in other areas of § 523 litigation, numerous courts have held that the income of the non-filing spouse was to be considered when determining the dischargeability of a debt. *See, Gamble v. Gamble (In re Gamble )*, 143 F.3d 223, 226 (5th Cir.1998)(discusses the correctness of counting a new spouse's contribution to household income under § 523(a)(15)(A)); *Bahr v. Bahr (In re Bahr )*, 276 B.R. 444, 447 (Bankr.N.D.Miss.2000)(include not only the new wife's income but also her expenses under § 523(a)(15)). Therefore, the Court will consider the income of Mrs. Wynn and the total household expenses in order to determine whether the Debtor and his dependents can maintain a minimal standard of living if he is required to repay his student loan.

### B.

 In determining what is a minimal standard of living, "(d)ebtors cannot satis-fy this test 'merely because repayment of [the student loan] would require some major personal or financial sacrifices.' *Gerhardt* demands more than a showing of tight finances: it requires that a debtor prove he cannot afford reasonably necessary living expenses if he is forced to repay his student loans." *In re Salyer*, 348 B.R. at 71 (footnote omitted). "Specifically, the bankruptcy court must determine what amount is minimally necessary to ensure that the debtor's needs for care, including food, shelter, clothing, and medical treatment, are met. Once that determination is made, the question is whether the debtor has additional funds with which to make payments toward (his) student loans." *Gill v. Nelnet Loan Services, Inc. (In re Gill )*, 326 B.R. 611, 626 (Bankr. E.D.Va.2005) (citations omitted).

 In the case at bar, ECMC has shown that the Debtor and his spouse have a combined net monthly income of $6,000 (Debtor $2,800 and Mrs. Wynn $3,200). The total monthly expenses of the household are $3,846.99; therefore, the monthly income of the household exceeds the Wynn's expenses by $2,153.01. Consequently, there is no question that the Debtor and his dependents have what is minimally necessary to have their needs "for care, including food, shelter, clothing and medical treatment" met, and that the Debtor will still have additional funds in which to repay his student loan. Therefore, the Court finds that ECMC has met its burden of demonstrating the absence of a genuine issue of material fact with regard to the first prong of the *Brunner* test. The burden now shifts to the Debtor to "identify specific evidence in the record

---

10. For a comprehensive list of courts who have held that a court should include the income of the debtor and his or her spouse when determining what is a minimal standard of living in the context of § 523(a)(8), see *In re White*, 243 B.R. at 509, fn. 9.

and to articulate the precise manner in which that evidence supports his claim." *Ragas,* 136 F.3d at 458.

In his Response and Brief, the Debtor states that his expenses exceed his income. In addition, the Debtor states that his wife recently concluded treatment for breast cancer and is scheduled to see her doctor every six months for monitoring of her condition and that he had additional expenses of $500 per month because of her condition. However, the Debtor does not go beyond his pleadings and attach affidavit(s), depositions, answers to interrogatories or admissions to support these assertions and thereby identify specific facts which show a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The Debtor has not identified "specific evidence in the record (or articulated) the precise manner in which that evidence supports his claim" [11] that his expenses exceed his income. Other than his statements in his pleadings with regard to his wife's breast cancer, the Debtor has not produced any evidence to substantiate his claims that he has additional expenses of $500 per month as a result of her treatment. Therefore, the Court finds that the Debtor has failed to meet his burden because instead of evidence, the Debtor simply argues his position that the repayment of his student loan would be an undue hardship. As stated previously, "(o)nly evidence ... will satisfy the [debtor's] burden." *Solo Serve,* 929 F.2d at 164.

The Court finds that no genuine issue of material facts exists as to the Debtor's ability to make payments on his student loan debt and to maintain a minimal standard of living for himself and his dependents, and therefore, ECMC is entitled to a judgment of nondischargeability of the student loan pursuant to § 524(a)(8) as a matter of law.

### C.

█ Having found that the Debtor has not met his burden under the first prong of the *Brunner* test, the Court's inquiry ends there with a finding of nondischargeability. As such, the Court need not consider the second and third prongs of the *Brunner* test. However, in the event the Court is incorrect in its holding on the first prong, the Court finds that the Debtor also has not met his burden under the third prong of the *Brunner* test.

█ The third prong of the *Brunner* test requires the Debtor to prove that he has made good faith efforts to repay the loan.

The good faith analysis requires the Court to consider the Debtor's "efforts to obtain employment, maximize income, and minimize expenses." *In re Frushour,* 433 F.3d 393, 402 (4th Cir.2005)(citing *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn),* 339 F.3d 559, 564 (7th Cir.2003)). Accordingly, good faith "encompasses a notion that the debtor may not willfully or negligently cause [his] own default, but rather [his] condition must result from factors beyond [his] reasonable control." *In re McMullin,* 316 B.R. 70, 78 (Bankr.E.D.La.2004)(citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993))(internal quotations omitted).

*In re Russ,* 365 B.R. at 645.

In his Response and Brief, the Debtor states that he made a good faith effort to repay his student loan to ECMC. He states that he graduated from college in 1995 with a degree in accounting, but that he had difficulty obtaining a job within his degree field. He further states that "in an effort to make a good faith attempt to

---

11. *Ragas,* 136 F.3d at 458.

meet his repayment obligations, Plaintiff consolidated his student loans with Sallie Mae." *Plaintiff's Response to ECMC's Motion for Summary Judgment and Brief in Support of ECMC's Motion for Summary Judgment,* p. 7, June 5, 2007.

The Court does not find that the Debtor's actions evidence a good faith effort to repay his student loan. The Court acknowledges that immediately after graduating from college in 1995, it appears that the Debtor had a difficult time obtaining employment as an accountant. However, the Debtor found gainful employment with the U.S. Army Corps of Engineers,[12] and he still he did not make any payments on his student loan. The Debtor consolidated his student loans shortly after his graduation in December of 1995, and from that time until 2001, the Debtor made only one payment on his student loan in the amount of $138.84. The Debtor has not produced any evidence to show that his default on his student loan was not willful or negligent. Nor has he shown that the reason he made only one payment over this five year period was a result of factors beyond his reasonable control. Therefore, the Court finds that the Debtor has not shown that he made a good faith effort to repay his student loan.

 In addition, during this same time period, there is no evidence that the Debtor attempted to take advantage of any of the repayment programs, such as the William D. Ford Program, which are offered to borrowers who are unable to meet their contractual obligations on their student loan. Rather, the Debtor obtained either deferments or forebearances of his payments. "A debtor's effort to seek out loan consolidation options that make the debt less onerous is an important indicator of good faith. 'Although not always dispositive, it illustrates that the debtor takes [his] obligations seriously, and is doing [his] utmost to repay them despite [his] unfortunate circumstances.'" *In re Salyer,* 348 B.R. at 72 (footnotes omitted).

 The Court also notes that when the Debtor filed bankruptcy in 2001, the Debtor scheduled $11,249 in unsecured debt and $55,000 in student loans. "Where a debtor's financial filings indicate that all or most of his scheduled debt consists of student loans, a suggestion of lack of good faith is raised in that the debtor's dominant motive in seeking relief is to evade student loan obligations." *In re Farrish,* 272 B.R. at 463 (citation omitted). Indeed, the Debtor states in his Response and Brief that he believed that his student loans had been discharged, and it was not until USAF made attempts to collect on the student loan that the Debtor attempted to work out payment arrangements with USAF. At that point, the Debtor then entered into a rehabilitation agreement with USAF in June of 2004. Pursuant to the agreement, the Debtor made payments of $250 each for twelve consecutive months, for a total of $3,000. From 1995 until 2005, these twelve payments constitute the only sustained period of time that the Debtor made payments on his student loan. Thereafter, the Debtor reopened his bankruptcy petition and filed this adversary in an attempt to have his student loan discharged.

For these reasons, the Court finds that the Debtor's payments over an eleven year period which totaled only $3,138.84 do not evidence a good faith effort to repay his student loan.

Having found that the Debtor has not met his burden under the first and third

---

**12.** The Debtor's *Schedule I—Current Income of Individual Debtor(s)* filed on February 27, 2001, states that he was an accountant and that he had been employed at the U.S. Army Corps of Engineers for eleven years. Since the Debtor did not graduate from college until 1995, the Court is unclear how long the Debtor has been employed with the Army Corps.

prong of the *Brunner* test, the Court will not address the second prong of the *Brunner* test.

### CONCLUSION

"(W)hen a student loan borrower accepts money from the government, [he] strikes a bargain. And '[l]ike all bargains, it entails risk. It is for each student individually to decide whether the risks of future hardship outweigh the potential benefits of a deferred-payment education.' *Brunner*, 46 B.R. at 756." *Brightful v. Pennsylvania Higher Education Asst. Agency (In re Brightful )*, 267 F.3d 324, 331 (3rd Cir.2001). Here, the Debtor struck his bargain and obtained a degree in accounting. While the Debtor may have experienced hardships since he completed his education, these hardships are not "undue" as required under § 523(a)(8).

ECMC has shown that the Debtor has the ability to make payments on his student loan debt and maintain a minimal standard of living for himself and his dependents. The Debtor has failed to produce evidence of a genuine issue of material fact to support his claim that the he and his dependents would be unable to maintain a minimal standard of living if he was required to repay his student loan.

In addition, the Debtor has failed to produce any evidence to show that he made a good faith effort to repay his student loan.

Therefore, no genuine issue of material fact exists and ECMC is entitled to a nondischargeable judgment pursuant § 523(a)(8) as a matter of law.

A separate judgment will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.