## TENNESSEE STUDENT ASSISTANCE CORPORATION *v.* HOOD

No. 02–1606.  Argued March 1, 2004—Decided May 17, 2004

*Daryl J. Brand*, Associate Solicitor General of Tennessee, argued the cause for petitioner. With him on the briefs were *Paul G. Summers*, Attorney General, *Michael E. Moore*, Solicitor General, *Cynthia E. Kinser*, Deputy Attorney General, and *Marvin E. Clements, Jr.*

*Leonard H. Gerson* argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of Ohio et al. by *Jim Petro*, Attorney General of Ohio, *Douglas R. Cole*, State Solicitor, and *Elise Porter*, Assistant Solicitor, by *Anabelle Rodríguez*, Secretary of Justice of Puerto Rico, and by the Attorneys General for their respective States as follows: *William H. Pryor, Jr.*, of Alabama, *Gregg Renkes* of Alaska, *Terry Goddard* of Arizona, *Mike Beebe* of Arkansas, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Charles J. Crist, Jr.*, of Florida, *Thurbert E. Baker* of Georgia, *Mark J. Bennett* of Hawaii, *Lawrence G. Wasden* of Idaho, *Lisa Madigan* of Illinois, *Steve Carter* of Indiana, *Tom Miller* of Iowa, *Phill Kline* of Kansas, *Albert B. Chandler III* of Kentucky, *Richard P. Ieyoub* of Louisiana, *G. Steven Rowe* of Maine, *J. Joseph Curran, Jr.*, of Maryland, *Thomas F. Reilly* of Massachusetts, *Michael A. Cox* of Michigan, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Jon Bruning* of Nebraska, *Brian Sandoval* of Nevada, *Peter Heed* of New Hampshire, *Peter C. Harvey* of New Jersey, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Article I, §8, cl. 4, of the Constitution provides that Congress shall have the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." We granted certiorari to determine whether this Clause grants Congress the authority to abrogate state sovereign immunity from private suits. Because we conclude that a proceeding initiated by a debtor to determine the dischargeability of a student loan debt is not a suit against the State for purposes of the Eleventh Amendment, we affirm the Court of Appeals' judgment, and we do not reach the question on which certiorari was granted.

## I

Petitioner, Tennessee Student Assistance Corporation (TSAC), is a governmental corporation created by the Tennessee Legislature to administer student assistance pro-

New York, *Roy Cooper* of North Carolina, *Wayne Stenehjem* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *D. Michael Fisher* of Pennsylvania, *Henry Dargan McMaster* of South Carolina, *Lawrence E. Long* of South Dakota, *Greg Abbott* of Texas, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, *Jerry W. Kilgore* of Virginia, *Christine O. Gregoire* of Washington, *Darrell V. McGraw, Jr.,* of West Virginia, *Peggy A. Lautenschlager* of Wisconsin, and *Patrick J. Crank* of Wyoming; and for the Council of State Governments et al. by *Richard Ruda* and *D. Bruce La Pierre.*

Briefs of *amici curiae* urging affirmance were filed for the Commercial Law League of America by *Robert D. Piliero;* for the National Association of Bankruptcy Trustees et al. by *Martin P. Sheehan, Robert C. Furr,* and *Neil C. Gordon;* for the National Association of Consumer Bankruptcy Attorneys by *Henry J. Sommer;* for Susan Block-Lieb et al. by *Susan M. Freeman* and *Richard Lieb;* for G. Eric Brunstad, Jr., by *Mr. Brunstad,* pro se, *Rheba Rutkowski,* and *Susan Kim;* for Bernard Katz by *P. Anthony Sammons* and *Allen E. Grimes III;* for Bruce H. Mann by *Brady C. Williamson;* and for Donald J. Spring by *C. Hall Swaim, Mitchel Appelbaum,* and *George W. Shuster, Jr.*

grams. Tenn. Code Ann. §49–4–201 (2002). TSAC guarantees student loans made to residents of Tennessee and to nonresidents who are either enrolled in an eligible school in Tennessee or make loans through an approved Tennessee lender. §49–4–203.

Between July 1988 and February 1990, respondent, Pamela Hood, a resident of Tennessee, signed promissory notes for educational loans guaranteed by TSAC. In February 1999, Hood filed a "no asset" Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Tennessee; at the time of the filing, her student loans had an outstanding balance of $4,169.31. TSAC did not participate in the proceeding, but Sallie Mae Service, Inc. (Sallie Mae), submitted a proof of claim to the Bankruptcy Court, which it subsequently assigned to TSAC.[1] The Bankruptcy Court granted Hood a general discharge in June 1999. See 11 U. S. C. §727(a).

Hood did not list her student loans in the bankruptcy proceeding, and the general discharge did not cover them. See §727(b) (providing that a discharge under §727(a) discharges the debtor from all prepetition debts except as listed in §523(a)); §523(a)(8) (providing that student loans guaranteed by governmental units are not included in a general discharge order unless the bankruptcy court determines that excepting the debt from the order would impose an "undue hardship" on the debtor). In September 1999, Hood reopened her bankruptcy petition for the limited purpose of seeking a determination by the Bankruptcy Court that her student loans were dischargeable as an "undue hardship" pursuant to §523(a)(8). As prescribed by the Federal Rules of Bankruptcy Procedure, Hood filed a complaint against the

---

[1] Sallie Mae was the original holder of Hood's student loan debt. On November 15, 1999, Sallie Mae signed an assignment of proof of claim, transferring the debt to TSAC. The actual proof of claim was filed by Sallie Mae in the Bankruptcy Court on November 29, and one month later, on December 29, the assignment of the proof of claim was filed.

United States of America, the Department of Education, and Sallie Mae, see Fed. Rules Bkrtcy. Proc. 7001(6) and 7003, and later filed an amended complaint in which she included TSAC and University Account Services as additional defendants and deleted Sallie Mae. The complaint and the amended complaint were served along with a summons on each of the named parties. See Rule 7004.

In response, TSAC filed a motion to dismiss the complaint for lack of jurisdiction, asserting Eleventh Amendment sovereign immunity.[2] The Bankruptcy Court denied the motion, holding that 11 U. S. C. § 106(a) was a valid abrogation of TSAC's sovereign immunity. App. to Pet. for Cert. A–62. TSAC took an interlocutory appeal, see *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U. S. 139, 147 (1993), and a unanimous Bankruptcy Appellate Panel of the Sixth Circuit affirmed, 262 B. R. 412 (2001). TSAC appealed the panel's decision to the United States Court of Appeals for the Sixth Circuit. That court affirmed, holding that the States ceded their immunity from private suits in bankruptcy in the Constitutional Convention, and therefore, the Bankruptcy Clause, U. S. Const., Art. I, § 8, cl. 4, provided Congress with the necessary authority to abrogate state sovereign immunity in 11 U. S. C. § 106(a). 319 F. 3d 755, 767 (2003). One judge concurred in the judgment, concluding that TSAC waived its sovereign immunity when it accepted Sallie Mae's proof of claim.[3] *Id.*, at 768. We granted certiorari, 539 U. S. 986 (2003), and now affirm the judgment of the Court of Appeals. Because we hold that a bankruptcy court's discharge of a student loan debt does not implicate a State's Eleventh Amendment immunity, we do not reach the broader question addressed by the Court of Appeals.

---

[2] Hood does not dispute that TSAC is considered a "State" for purposes of the Eleventh Amendment.

[3] Hood does not argue in this Court that TSAC waived its sovereign immunity, and we pass no judgment on the question.

## II

By its terms, the Eleventh Amendment precludes suits "in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." For over a century, however, we have recognized that the States' sovereign immunity is not limited to the literal terms of the Eleventh Amendment. See *Hans* v. *Louisiana*, 134 U. S. 1 (1890). Although the text of the Amendment refers only to suits against a State by citizens of another State, we have repeatedly held that an unconsenting State also is immune from suits by its own citizens. See, *e. g., id.*, at 15; *Duhne* v. *New Jersey*, 251 U. S. 311, 313 (1920); *Great Northern Life Ins. Co.* v. *Read*, 322 U. S. 47, 51 (1944); *Employees of Dept. of Public Health and Welfare of Mo.* v. *Department of Public Health and Welfare of Mo.*, 411 U. S. 279, 280 (1973); *Edelman* v. *Jordan*, 415 U. S. 651, 662–663 (1974); *Seminole Tribe of Fla.* v. *Florida*, 517 U. S. 44, 55 (1996).

States, nonetheless, may still be bound by some judicial actions without their consent. In *California* v. *Deep Sea Research, Inc.*, 523 U. S. 491 (1998), we held that the Eleventh Amendment does not bar federal jurisdiction over *in rem* admiralty actions when the State is not in possession of the property. In that case, a private corporation located a historic shipwreck, the S. S. *Brother Jonathan*, in California's territorial waters. The corporation filed an *in rem* action in federal court seeking rights to the wreck and its cargo. The State of California intervened, arguing that it possessed title to the wreck and that its sovereign immunity precluded the court from adjudicating its rights. While acknowledging that the Eleventh Amendment might constrain federal courts' admiralty jurisdiction in some instances, *id.*, at 503 (citing *Ex parte New York*, 256 U. S. 490 (1921) *(New York I); Ex parte New York*, 256 U. S. 503 (1921) *(New York II); Florida Dept. of State* v. *Treasure Salvors, Inc.*, 458 U. S. 670 (1982)), we held that the States' sovereign immu-

nity did not prohibit *in rem* admiralty actions in which the State did not possess the res, 523 U. S., at 507–508 (citing *e. g., The Davis,* 10 Wall. 15 (1870); *The Pesaro,* 255 U. S. 216 (1921)).

The discharge of a debt by a bankruptcy court is similarly an *in rem* proceeding. See *Gardner* v. *New Jersey,* 329 U. S. 565, 574 (1947); *Straton* v. *New,* 283 U. S. 318, 320–321 (1931); *Hanover Nat. Bank* v. *Moyses,* 186 U. S. 181, 192 (1902); *New Lamp Chimney Co.* v. *Ansonia Brass & Copper Co.,* 91 U. S. 656, 662 (1876). Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate. See 28 U. S. C. § 1334(e). In a typical voluntary bankruptcy proceeding under Chapter 7, the debtor files a petition for bankruptcy in which he lists his debts or his creditors, Fed. Rule Bkrtcy. Proc. 1007(a)(1); the petition constitutes an order for relief, 11 U. S. C. § 301. The court clerk notifies the debtor's creditors of the order for relief, see Rule 2002(*l*), and if a creditor wishes to participate in the debtor's assets, he files a proof of claim, Rule 3002(a); see 11 U. S. C. § 726. If a creditor chooses not to submit a proof of claim, once the debts are discharged, the creditor will be unable to collect on his unsecured loans. Rule 3002(a); see 11 U. S. C. § 726. The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt. §§ 524(a)(1), (2); 3 W. Norton, Bankruptcy Law and Practice 2d § 48:1, p. 48–3 (1998) (hereinafter Norton).

A bankruptcy court is able to provide the debtor a fresh start in this manner, despite the lack of participation of all of his creditors, because the court's jurisdiction is premised on the debtor and his estate, and not on the creditors. *In re Collins,* 173 F. 3d 924, 929 (CA4 1999) ("A federal court's jurisdiction over the dischargeability of debt . . . derives not from jurisdiction over the state or other creditors, but rather

from jurisdiction over debtors and their estates" (internal quotation marks omitted)); see also *Gardner, supra,* at 572; *In re Ellett,* 254 F. 3d 1135, 1141 (CA9 2001); *Texas* v. *Walker,* 142 F. 3d 813, 822 (CA5 1998). A bankruptcy court's *in rem* jurisdiction permits it to "determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is 'one against the world.'" 16 J. Moore et al., Moore's Federal Practice § 108.70[1], p. 108–106 (3d ed. 2004). Because the court's jurisdiction is premised on the res, however, a nonparticipating creditor cannot be subjected to personal liability. See *Freeman* v. *Alderson,* 119 U. S. 185, 188–189 (1886) (citing *Cooper* v. *Reynolds,* 10 Wall. 308 (1870)).

Under our longstanding precedent, States, whether or not they choose to participate in the proceeding, are bound by a bankruptcy court's discharge order no less than other creditors. In *New York* v. *Irving Trust Co.,* 288 U. S. 329 (1933), we sustained an order of the Bankruptcy Court which barred the State of New York's tax claim because it was not filed within the time fixed for the filing of claims. We held that "[i]f a state desires to participate in the assets of a bankrupt, she must submit to the appropriate requirements." *Id.,* at 333; see also *Gardner, supra,* at 574 (holding that a State waives its sovereign immunity by filing a proof of claim). And in *Van Huffel* v. *Harkelrode,* 284 U. S. 225, 228–229 (1931), we held that the Bankruptcy Court had the authority to sell a debtor's property "free and clear" of a State's tax lien. At least when the bankruptcy court's jurisdiction over the res is unquestioned, cf. *United States* v. *Nordic Village, Inc.,* 503 U. S. 30 (1992), our cases indicate that the exercise of its *in rem* jurisdiction to discharge a debt does not infringe state sovereignty.[4] Cf. *Hoffman* v. *Connecticut Dept. of In-*

---

[4] *Missouri* v. *Fiske,* 290 U. S. 18 (1933), is not to the contrary. In that case, private individuals sought to enjoin the State of Missouri from prosecuting probate proceedings in state court, contending that the Federal District Court had made a final determination of the ownership of the

*come Maintenance,* 492 U. S. 96, 102 (1989) (plurality opinion) (applying Eleventh Amendment analysis where a Bankruptcy Court sought to issue a money judgment against a nonconsenting State).

TSAC concedes that States are generally bound by a bankruptcy court's discharge order, see Tr. of Oral Arg. 17, but argues that the particular process by which student loan debts are discharged unconstitutionally infringes its sovereignty. Student loans used to be presumptively discharged in a general discharge. But in 1976, Congress provided a significant benefit to the States by making it more difficult for debtors to discharge student loan debts guaranteed by States. Education Amendments of 1976, § 439A(a), 90 Stat. 2141 (codified at 20 U. S. C. § 1087–3 (1976 ed.), repealed by Pub. L. 95–598, § 317, 92 Stat. 2678). That benefit is currently governed by 11 U. S. C. § 523(a)(8), which provides that student loan debts guaranteed by governmental units are not included in a general discharge order unless excepting the debt from the order would impose an "undue hardship" on the debtor. See also § 727(b) (providing that a discharge under § 727(a) discharges the debtor from all prepetition debts except as listed in § 523(a)).

---

contested stock. We held the Eleventh Amendment prevented federal courts from entertaining such a suit because a "[federal] court has no authority to issue process against the State to compel it to subject itself to the court's judgment." *Id.,* at 28. Although a discharge order under the Bankruptcy Code "operates as an injunction" against creditors who commence or continue an action against a debtor *in personam* to recover or to collect a discharged debt, 11 U. S. C. § 524(a)(2), the enforcement of such an injunction against the State by a federal court is not before us. To the extent that *Fiske* is relevant in the present context, it supports our conclusion that a discharge order is binding on the State. There, we noted the State might still be bound by the federal court's adjudication even if an injunction could not issue. 290 U. S., at 29. It is unlikely that the Court *sub silentio* overruled the holdings in *Irving Trust* and *Van Huffel* in *Fiske* as JUSTICE THOMAS implies, see *post,* at 463 (dissenting opinion), as *Fiske* was decided the same year as *Irving Trust.*

Section 523(a)(8) is "self-executing." Norton § 47:52, at 47–137 to 47–138; see also S. Rep. No. 95–989, p. 79 (1978). Unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt. Norton § 47:52, at 47–137 to 47–138. Thus, the major difference between the discharge of a student loan debt and the discharge of most other debts is that governmental creditors, including States, that choose not to submit themselves to the court's jurisdiction might still receive some benefit: The debtor's personal liability on the loan may survive the discharge.

It is this change that TSAC contends infringes state sovereignty. Tr. of Oral Arg. 15–16. By making a student loan debt presumptively nondischargeable and singling it out for an "individualized adjudication," id., at 17, TSAC argues that Congress has authorized a suit against a State. But TSAC misunderstands the fundamental nature of the proceeding.

No matter how difficult Congress has decided to make the discharge of student loan debt, the bankruptcy court's jurisdiction is premised on the res, not on the persona; that States were granted the presumptive benefit of nondischargeability does not alter the court's underlying authority. A debtor does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt; nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge of his debts.

Indeed, we have previously endorsed individualized determinations of States' interests within the federal courts' in rem jurisdiction. In Van Huffel, we affirmed the bankruptcy courts' power to sell property free from encumbrances, including States' liens, and approvingly noted that some courts had chosen specifically to discharge States' liens for taxes. 284 U. S., at 228; cf. Gardner, 329 U. S., at 572–574 (noting "that the reorganization court had jurisdiction over the proof and allowance of the tax claims and that the exercise of that power was not a suit against the State").

Our decision in *California* v. *Deep Sea Research, Inc.*, 523 U. S. 491 (1998), also involved an individualized *in rem* adjudication in which a State claimed an interest, as have other *in rem* admiralty cases involving sovereigns, *e. g., The Davis*, 10 Wall., at 19; *The Siren*, 7 Wall. 152, 159 (1869); *The Pesaro*, 255 U. S., at 219. Although both bankruptcy and admiralty are specialized areas of the law, we see no reason why the exercise of the federal courts' *in rem* bankruptcy jurisdiction is more threatening to state sovereignty than the exercise of their *in rem* admiralty jurisdiction.

We find no authority, *in fine*, that suggests a bankruptcy court's exercise of its *in rem* jurisdiction to discharge a student loan debt would infringe state sovereignty in the manner suggested by TSAC. We thus hold that the undue hardship determination sought by Hood in this case is not a suit against a State for purposes of the Eleventh Amendment.[5]

## III

Lastly, we deal with the procedure that was used in this case. Creditors generally are not entitled to personal service before a bankruptcy court may discharge a debt. *Hanover Nat. Bank*, 186 U. S., at 192. Because student loan debts are not automatically dischargeable, however, the Federal Rules of Bankruptcy Procedure provide creditors greater procedural protection. See Fed. Rules Bkrtcy. Proc. 7001(6), 7003, and 7004. The current Bankruptcy Rules require the debtor to file an "adversary proceeding" against the State in order to discharge his student loan debt. The

---

[5] This is not to say, "a bankruptcy court's *in rem* jurisdiction overrides sovereign immunity," *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 38 (1992), as JUSTICE THOMAS characterizes our opinion, *post*, at 462, but rather that the court's exercise of its *in rem* jurisdiction to discharge a student loan debt is not an affront to the sovereignty of the State. Nor do we hold that every exercise of a bankruptcy court's *in rem* jurisdiction will not offend the sovereignty of the State. No such concerns are present here, and we do not address them.

proceeding is considered part of the original bankruptcy case, see 10 Collier on Bankruptcy ¶ 7003.02 (rev. 15th ed. 2003), and still within the bankruptcy court's *in rem* jurisdiction as discussed above. But, as prescribed by the Rules, an "adversary proceeding" requires the service of a summons and a complaint. Rules 7001(6), 7003, and 7004.

Because this "adversary proceeding" has some similarities to a traditional civil trial, JUSTICE THOMAS contends that the Bankruptcy Court cannot make an undue hardship determination without infringing TSAC's sovereignty under *Federal Maritime Comm'n* v. *South Carolina Ports Authority*, 535 U. S. 743 (2002). See *post*, at 457–460. In *Federal Maritime Comm'n*, we held that the Eleventh Amendment precluded a private party from haling an unconsenting State into a proceeding before the Federal Maritime Commission (FMC). We noted that we have applied a presumption since *Hans* v. *Louisiana*, 134 U. S. 1 (1890), "that the Constitution was not intended to 'rais[e] up' any proceedings against the States that were 'anomalous and unheard of when the Constitution was adopted.'" 535 U. S., at 755. Because agency adjudications were unheard of at the time of the founding, we had to determine whether the FMC proceeding was "the type of proceedin[g] from which the Framers would have thought the States possessed immunity when they agreed to enter the Union." *Id.*, at 756. Noting the substantial similarities between a proceeding before the FMC and one before an Article III court, we concluded that the *Hans* presumption applied, see 535 U. S., at 756–763, and that the Eleventh Amendment therefore precluded private suits in such a forum, *id.*, at 769.

In this case, however, there is no need to engage in a comparative analysis to determine whether the adjudication would be an affront to States' sovereignty. As noted above, we have long held that the bankruptcy courts' exercise of *in rem* jurisdiction is not such an offense. *Supra*, at 448–451. Nor is there any dispute that, if the Bankruptcy Court had

to exercise personal jurisdiction over TSAC, such an adjudication would implicate the Eleventh Amendment. Our precedent has drawn a distinction between *in rem* and *in personam* jurisdiction, even when the underlying proceedings are, for the most part, identical. Thus, whether an *in rem* adjudication in a bankruptcy court is similar to civil litigation in a district court is irrelevant. If JUSTICE THOMAS' interpretation of *Federal Maritime Comm'n* were adopted, *Deep Sea Research, Van Huffle,* and *Irving Trust,* all of which involved proceedings resembling traditional civil adjudications, would likely have to be overruled. We are not willing to take such a step.

The issuance of process, nonetheless, is normally an indignity to the sovereignty of a State because its purpose is to establish personal jurisdiction over the State. We noted in *Seminole Tribe:* "The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." 517 U. S., at 58 (citations and internal quotation marks omitted).

Here, however, the Bankruptcy Court's *in rem* jurisdiction allows it to adjudicate the debtor's discharge claim without *in personam* jurisdiction over the State. See 4A C. Wright & A. Miller, Federal Practice and Procedure § 1070, pp. 280–281 (3d ed. 2002) (noting jurisdiction over the person is irrelevant if the court has jurisdiction over the property). Hood does not argue that the court should exercise personal jurisdiction; all she wants is a determination of the dischargeability of her debt. The text of § 523(a)(8) does not require a summons, and absent Rule 7001(6) a debtor could proceed by motion, see Rule 9014 ("[I]n a contested matter . . . not otherwise governed by these rules, relief shall be requested by motion"), which would raise no constitutional concern. Hood concedes that even if TSAC ignores the summons and chooses not to participate in the proceeding the

Bankruptcy Court cannot discharge her debt without making an undue hardship determination. Tr. of Oral Arg. 33–34.

We see no reason why the service of a summons, which in this case is indistinguishable in practical effect from a motion, should be given dispositive weight. As we said in *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U. S. 261, 270 (1997), "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." See *New York I*, 256 U. S., at 500 (a suit against a State "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record"). To conclude that the issuance of a summons, which is required only by the Rules, precludes Hood from exercising her statutory right to an undue hardship determination would give the Rules an impermissible effect. 28 U. S. C. § 2075 ("[The Bankruptcy Rules] shall not abridge, enlarge, or modify any substantive right"). And there is no reason to take such a step. TSAC sought only to dismiss the complaint for lack of jurisdiction in the Bankruptcy Court. Motion to Dismiss Complaint for Lack of Jurisdiction in No. 99–0847 (Bkrtcy. Ct. WD Tenn.), pp. 1–2. Clearly dismissal of the complaint is not appropriate as the court has *in rem* jurisdiction over the matter, and the court here has not attempted to adjudicate any claims outside of that jurisdiction. The case before us is thus unlike an adversary proceeding by the bankruptcy trustee seeking to recover property in the hands of the State on the grounds that the transfer was a voidable preference. Even if we were to hold that Congress lacked the ability to abrogate state sovereign immunity under the Bankruptcy Clause, as TSAC urges us to do, the Bankruptcy Court would still have the authority to make the undue hardship determination sought by Hood.

We therefore decline to decide whether a bankruptcy court's exercise of personal jurisdiction over a State would be valid under the Eleventh Amendment. See *Liverpool,*

*New York & Philadelphia S. S. Co.* v. *Commissioners of Emigration,* 113 U. S. 33, 39 (1885) ("[We are bound] never to anticipate a question of constitutional law in advance of the necessity of deciding it"). If the Bankruptcy Court on remand exceeds its *in rem* jurisdiction, TSAC, of course, will be free to challenge the court's authority. At this point, however, any such constitutional concern is merely hypothetical. The judgment of the United States Court of Appeals for the Sixth Circuit is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, with whom JUSTICE GINSBURG joins, concurring.

I join in the Court's opinion, save for any implicit approval of the holding in *Seminole Tribe of Fla.* v. *Florida,* 517 U. S. 44 (1996).

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

We granted certiorari in this case to decide whether Congress has the authority to abrogate state sovereign immunity under the Bankruptcy Clause. 539 U. S. 986 (2003). Instead of answering this question, the Court addresses a more difficult one regarding the extent to which a bankruptcy court's exercise of its *in rem* jurisdiction could offend the sovereignty of a creditor-State. I recognize that, as the Court concludes today, the *in rem* nature of bankruptcy proceedings might affect the ability of a debtor to obtain, *by motion,* a bankruptcy court determination that affects a creditor-State's rights, but I would not reach this difficult question here. Even if the Bankruptcy Court could have exercised its *in rem* jurisdiction to make an undue hardship determination by motion, I cannot ignore the fact that the determination in this case was sought pursuant to an adversary proceeding. Under *Federal Maritime Comm'n* v.

*South Carolina Ports Authority,* 535 U. S. 743 (2002), the adversary proceeding here clearly constitutes a suit against the State for sovereign immunity purposes. I would thus reach the easier question presented and conclude that Congress lacks authority to abrogate state sovereign immunity under the Bankruptcy Clause.

## I

The Court avoids addressing respondent's principal argument—which was the basis for the Court of Appeals' decision and which this Court granted certiorari in order to address—namely, that Congress possesses the power under the Bankruptcy Clause to abrogate a State's sovereign immunity from suit. Instead, the Court affirms the judgment of the Court of Appeals based on respondent's alternative argument, *ante,* at 445, that the Bankruptcy Court's decision was "an appropriate exercise of [its] *in rem* jurisdiction," Brief for Respondent 35. .Although respondent advanced this argument in the proceedings before the Bankruptcy Appellate Panel of the Sixth Circuit, Brief for Appellee in No. 00–8062, p. 8, she declined to do so in the Court of Appeals. Indeed, before that court, respondent relied entirely on Congress' ability to abrogate state sovereign immunity under the Bankruptcy Clause rather than on any *in rem* theory because, under her reading of *Missouri* v. *Fiske,* 290 U. S. 18 (1933), "there is no *in rem* exception to a state's Eleventh Amendment immunity" in bankruptcy. Brief for Appellee in No. 01–5769 (CA6), p. 24. Furthermore, respondent did not raise the *in rem* argument in her brief in opposition before this Court. Under this Court's Rule 15.2, we may deem this argument waived. *Caterpillar Inc.* v. *Lewis,* 519 U. S. 61, 75, n. 13 (1996). And, we should do so here both because the argument is irrelevant to this case, and because the *in rem* question is both complex and uncertain, see *Baldwin* v. *Reese, ante,* p. 27.

## A

In *Federal Maritime Comm'n*, South Carolina Maritime Services, Inc. (SCMS), filed a complaint with the Federal Maritime Commission (FMC), an independent agency, alleging that a state-run port had violated the Shipping Act of 1984, 46 U. S. C. App. § 1701 *et seq.* We assumed without deciding that the FMC does not exercise "judicial power," 535 U. S., at 754, and nonetheless held that state sovereign immunity barred the adjudication of SCMS' complaint. *Id.,* at 769.

*Federal Maritime Comm'n* turned on the "overwhelming" similarities between FMC proceedings and civil litigation in federal courts. *Id.,* at 759. For example, FMC's rules governing pleadings and discovery are very similar to the analogous Federal Rules of Civil Procedure. *Id.,* at 757–758. Moreover, we noted that "the role of the [administrative law judge], the impartial officer designated to hear a case, is similar to that of an Article III judge." *Id.,* at 758 (footnote and citation omitted). Based on these similarities, we held that, for purposes of state sovereign immunity, the adjudication before the FMC was indistinguishable from an adjudication in an Article III tribunal. See *id.,* at 760–761. Thus, *Federal Maritime Comm'n* recognized that if the Framers would have found it an "impermissible affront to a State's dignity to be required to answer the complaints of private parties in federal courts," the Framers would have found it equally impermissible to compel States to do so simply because the adjudication takes place in an Article I rather than an Article III court. *Ibid.*

Although the Court ignores *Federal Maritime Comm'n* altogether, its reasoning applies to this case. The similarities between adversary proceedings in bankruptcy and federal civil litigation are striking. Indeed, the Federal Rules of Civil Procedure govern adversary proceedings in substantial part. The proceedings are commenced by the filing of a complaint, Fed. Rule Bkrtcy. Proc. 7003; process is served,

Rule 7005; the opposing party is required to file an answer, Rule 7007; and the opposing party can file counterclaims against the movant, Rule 7013. Federal Rule of Civil Procedure 8 applies to the parties' pleadings. Fed. Rule Bkrtcy. Proc. 7008. Even the form of the parties' pleadings must comply with the federal rules for civil litigation. Rule 7010. "Likewise, discovery in [adversary proceedings] largely mirrors discovery in federal civil litigation." *Federal Maritime Comm'n, supra,* at 758. See Fed. Rules Bkrtcy. Proc. 7026–7037 (applying Fed. Rules Civ. Proc. 26–37 to adversary proceedings). And, when a party fails to answer or appear in an adversary proceeding, the Federal Rule governing default judgments applies. Fed. Rule Bkrtcy. Proc. 7055 (adopting Fed. Rule Civ. Proc. 55).

In spite of these similarities, the Court concludes that, because the bankruptcy court's jurisdiction is premised on the res, the issuance of process in this case, as opposed to all others, does not subject an unwilling State to a coercive judicial process. *Ante,* at 452. The Court also views the adversary proceeding in this case differently than a typical adversary proceeding because, absent Federal Rule of Bankruptcy Procedure 7001(6), the Court concludes that a debtor could obtain an undue hardship determination by motion consistent with a bankruptcy court's *in rem* jurisdiction and consistent with the Constitution. See *ante,* at 453.

Critically, however, the Court fails to explain why, simply because it asserts that this determination *could have been made* by motion, the adversary proceeding utilized in this case is somehow less offensive to state sovereignty. After all, "[t]he very object and purpose of the 11th Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *In re Ayers,* 123 U. S. 443, 505 (1887); *Federal Maritime Comm'n, supra,* at 760; *Alden* v. *Maine,* 527 U. S. 706, 748 (1999); *Seminole Tribe of Fla.* v. *Florida,* 517 U. S. 44, 58 (1996). The fact that an alternative proceeding exists,

the use of which might not be offensive to state sovereignty, is irrelevant to whether the particular proceeding actually used subjects a particular State to the indignities of coercive process. Indeed, the dissent in *Federal Maritime Comm'n*, much like the Court today, focused on the fact that the FMC was not required by statute to evaluate complaints through agency adjudication, 535 U. S., at 774–776 (opinion of BREYER, J.), and could have opted to evaluate complaints in some other manner. But this fact had no bearing on our decision in that case, nor should it control here. I simply cannot ignore the fact that respondent filed a complaint in the Bankruptcy Court "pray[ing] that proper process issue and that upon a hearing upon the merits that [the court] issue a judgment for [respondent] and against [petitioner] allowing [respondent's] debt to be discharged." Complaint for Hardship Discharge in No. 99–22606–K, Adversary No. 99–0847 (Bkrtcy. Ct. WD Tenn.), p. 1.

More importantly, although the adversary proceeding in this case does not require the State to "defend itself" against petitioner in the ordinary sense, the effect is the same, whether done by adversary proceeding or by motion, and whether the proceeding is *in personam* or *in rem*. In order to preserve its rights, the State is compelled either to subject itself to the Bankruptcy Court's jurisdiction or to forfeit its rights. And, whatever the nature of the Bankruptcy Court's jurisdiction, it maintains at least as much control over nonconsenting States as the FMC, which lacks the power to enforce its own orders. *Federal Maritime Comm'n* rejected the view that the FMC's lack of enforcement power means that parties are not coerced to participate in its proceedings because the effect is the same—a State must submit to the adjudication or compromise its ability to defend itself in later proceedings. 535 U. S., at 761–764. Here, if the State does not oppose the debtor's claim of undue hardship, the Bankruptcy Court is authorized to enter a default judgment *without making an undue hardship determi-*

*nation.* See Fed. Rules Bkrtcy. Proc. 7055, 9014 (adopting Fed. Rule Civ. Proc. 55 in both adversary proceedings and in contested matters governed by motion). The Court apparently concludes otherwise, but, tellingly, its only support for that questionable proposition is a statement made at oral argument. See *ante,* at 453–454.

As I explain in Part I–B, *infra,* I do not contest the assertion that in bankruptcy, like admiralty, there might be a limited *in rem* exception to state sovereign immunity from suit. Nor do I necessarily reject the argument that this proceeding could have been resolved by motion without offending the dignity of the State. However, because this case did not proceed by motion, I cannot resolve the merits based solely upon what might have, but did not, occur. I would therefore hold that the adversary proceeding in this case constituted a suit against the State for sovereign immunity purposes.

B

The difficulty and complexity of the question of the scope of the Bankruptcy Court's *in rem* jurisdiction as it relates to a State's interests is a further reason that the Court should not address the question here without complete briefing and full consideration by the Court of Appeals.

Relying on this Court's recent recognition of a limited *in rem* exception to state sovereign immunity in certain admiralty actions, see *California* v. *Deep Sea Research, Inc.,* 523 U. S. 491 (1998), the Court recognizes that "States . . . may still be bound by some judicial actions without their consent," *ante,* at 446. The Court then acknowledges the undisputed fact that bankruptcy discharge proceedings are *in rem* proceedings. *Ante,* at 447. These facts, however, standing alone, do not compel the conclusion that the *in rem* exception should extend to this case.

*Deep Sea Research, supra,* does not make clear the extent of the *in rem* exception in admiralty, much less its potential application in bankruptcy. The Court's recognition of an *in*

*rem* exception to state sovereign immunity in admiralty actions was informed, in part, by Justice Story's understanding of the difference between admiralty actions and regular civil litigation. Justice Story doubted whether the Eleventh Amendment extended to admiralty and maritime suits at all because, in admiralty, "the jurisdiction of the [federal] court is founded upon the possession of the thing; and if the State should interpose a claim for the property, it does not act merely in the character of a defendant, but as an actor." 2 Commentaries on the Constitution of the United States § 1689, p. 491 (5th ed. 1891). Justice Story supported this view by contrasting suits in law or equity with suits in admiralty, which received a separate grant of jurisdiction under Article III. *Id.*, at 491–492. The Court, however, has since adopted a more narrow understanding of the *in rem* maritime exception. See *Ex parte New York*, 256 U. S. 490, 497 (1921) ("Nor is the admiralty and maritime jurisdiction exempt from the operation of the rule [that a State may not be sued without its consent]"). Thus, our holding in *Deep Sea Research* was limited to actions where the res is not within the State's possession. 523 U. S., at 507–508.

Whatever the scope of the *in rem* exception in admiralty, the Court's cases reveal no clear principle to govern which, if any, bankruptcy suits are exempt from the Eleventh Amendment's bar. In *Fiske*, 290 U. S., at 28, the Court stated in no uncertain terms that "[t]he fact that a suit in a federal court is *in rem*, or *quasi in rem*, furnishes no ground for the issue of process against a non-consenting State." The Court contends that *Fiske* supports its argument because there the Court "noted the State might still be bound by the federal court's adjudication even if an injunction could not issue." *Ante*, at 449, n. 4. But the Court in *Fiske* also suggested that the State might not be bound by the federal court's adjudication—a more weighty proposition given the circumstances of the case. *Fiske*, in part, involved the validity of a federal-court decree entered in 1927, which deter-

mined that Sophie Franz had only a life interest in certain shares of stock previously held by her deceased husband. When Franz died in 1930, Franz's executor did not inventory the shares because the federal-court decree declared Franz to have only a life interest in them. The dispute arose because the State sought to inventory those shares as assets of Franz's estate so that it could collect inheritance taxes on those shares. Although *Fiske* did not decide whether the 1927 federal decree was binding on the State, 290 U. S., at 29, the mere suggestion that the State might not be bound by the decree because it was not a party to an *in rem* proceeding in which it had no interest, see *ibid.*, at least leaves in doubt the extent of any *in rem* exception in bankruptcy.

Our more recent decision in *United States* v. *Nordic Village, Inc.*, 503 U. S. 30 (1992), casts some doubt upon the Court's characterization of any *in rem* exception in bankruptcy. *Nordic Village* explicitly recognized that "we have never applied an *in rem* exception to the sovereign-immunity bar against monetary recovery, and have suggested that no such exception exists." *Id.*, at 38. Although *Nordic Village* involved the sovereign immunity of the Federal Government, it also supports the argument that no *in rem* exception exists for other types of relief against a State. *Nordic Village* interpreted 11 U. S. C. § 106(c) to waive claims for declaratory and injunctive, though not monetary, relief against the Government. 503 U. S., at 34–37. We noted that this interpretation did not render § 106(c) irrelevant because a waiver of immunity with respect to claims for declaratory and injunctive relief would "perform a significant function" by "permit[ing] a bankruptcy court to determine the amount and dischargeability of an estate's liability to the Government . . . whether or not the Government filed a proof of claim." *Id.*, at 36. Our interpretation of § 106(c) to waive liability only for declaratory and injunctive relief strongly suggests that such a waiver is necessary—*i. e.*, that without the waiver, despite the bankruptcy court's *in rem* jurisdic-

tion, the bankruptcy court could not order declaratory or injunctive relief against a State without the State's consent. Cf. *Raygor* v. *Regents of Univ. of Minn.*, 534 U. S. 533, 553, n. 11 (2002).

To be sure, the Court has previously held that a State can be bound by a bankruptcy court adjudication that affects a State's interest. See *New York* v. *Irving Trust Co.*, 288 U. S. 329 (1933); *Van Huffel* v. *Harkelrode*, 284 U. S. 225 (1931). But, in neither of those cases did the Court attempt to undertake a sovereign immunity analysis. *Irving Trust*, for instance, rested on Congress' "power to establish uniform laws on the subject of bankruptcies," 288 U. S., at 331, and the need for "orderly and expeditious proceedings," *id.*, at 333. And in *Van Huffel*, the Court appeared to rest its decision more on "the requirements of bankruptcy administration," 284 U. S., at 228, than the effect of the *in rem* nature of the proceedings on state sovereign immunity.\* Perhaps recognizing that these precedents cannot support the weight of its reasoning, the Court attempts to limit its holding by explicitly declining to find an *in rem* exception to every exercise of a bankruptcy court's *in rem* jurisdiction that might offend state sovereignty, *ante*, at 451, n. 5. But, I can find no principle in the Court's opinion to distinguish this case from any other. For this reason, I would not undertake this complicated inquiry.

## II

Congress has made its intent to abrogate state sovereign immunity under the Bankruptcy Clause clear. See 11 U. S. C. § 106(a). The only question, then, is whether the Bankruptcy Clause grants Congress the power to do so.

---

\**Gardner* v. *New Jersey*, 329 U. S. 565 (1947), also does not aid the Court's argument. Although *Gardner* held that the reorganization court could entertain objections to the State's asserted claim, the Court also held that the State waived its immunity by filing a proof of claim, thus obviating any need to consider the sovereign immunity question in the context of the *in rem* proceedings. *Id.*, at 573–574.

This Court has repeatedly stated that "Congress may not . . . base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I." *Board of Trustees of Univ. of Ala.* v. *Garrett,* 531 U. S. 356, 364 (2001). See also, *e. g., Kimel* v. *Florida Bd. of Regents,* 528 U. S. 62, 80 (2000) ("Congress' powers under Article I of the Constitution do not include the power to subject States to suit at the hands of private individuals"); *Florida Prepaid Postsecondary Ed. Expense Bd.* v. *College Savings Bank,* 527 U. S. 627, 636 (1999) ("*Seminole Tribe* makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers").

Despite the clarity of these statements, the Court of Appeals held that the Bankruptcy Clause operates differently from Congress' other Article I powers because of its "uniformity requirement," 319 F. 3d 755, 764 (CA6 2003). Our discussions of Congress' inability to abrogate state sovereign immunity through the use of its Article I powers reveal no such limitation. I would therefore reverse the judgment of the Court of Appeals.

For the foregoing reasons, I respectfully dissent.